**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JACIEL ROCHA,** individually and on behalf of similarly situated persons, | |
| Plaintiff, | |
| **v.** | **Case No. 1:20-cv-1902** |
| **CHIODO CORPORATION** et al., | **Jury Demanded** |
| Defendants. | |

**JOINT MOTION FOR (1) CERTIFICATION OF A COLLECTIVE AND CLASS ACTION FOR SETTLEMENT PURPOSES, (2) APPROVAL OF A COLLECTIVE ACTION SETTLEMENT, (3) PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT, (4) APPROVAL OF NOTICE TO PUTATIVE CLAIMANTS, AND (5) SCHEDULING A HEARING FOR FINAL APPROVAL OF THE PARTIES' CLASS <u>ACTION SETTLEMENT AGREEMENT, AND MEMORANDUM IN SUPPORT</u>**

Named Plaintiff Jaciel Rocha, individually and on behalf of all others similarly situated, and the above-named Defendants present this Motion seeking (1) certification of a Fair Labor Standards Act ("FLSA") collective action, and an Illinois and Wisconsin class action for settlement purposes, (2) approval of the Parties' collective action settlement, (3) preliminary approval of the Parties' class action settlement, (4) approval of notice to the putative claimants, and (5) scheduling a hearing for final approval of the Parties' class action settlement agreement.

A copy of the Parties' agreed-upon Settlement and Release Agreement ("Settlement Agreement") and the Class Notice and Claim Form are attached hereto as Exhibits to be filed under seal. The declaration of Plaintiff's attorney Meredith Black-Mathews in support of this motion and brief is also attached as an Exhibit. The Parties incorporate the following Memorandum in Support. The settlement meets the standards for approval and the Motion should be granted for the additional reasons that follow.

1

## MEMORANDUM IN SUPPORT

### I.     Facts and Procedural History

Defendants own and operate a chain of Domino's pizza stores located throughout Illinois and Wisconsin.  Named Plaintiff worked for Defendants as a pizza delivery driver from May 2019 to December 2019.

On March 3, 2020, Plaintiff filed suit against Defendants alleging minimum wage violations resulting from under-reimbursed vehicle costs incurred on the job in violation of the FLSA and the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("Illinois Wage Law"). Plaintiff asserted those claims individually and on behalf of similarly situated delivery drivers currently and formerly employed by Defendants.   Plaintiff alleged that Defendants under-reimbursed their delivery drivers' vehicle costs incurred on the job, thereby reducing the workers' net wages below the federal and state minimum wage rates (nominal wages – unreimbursed vehicle costs = subminimum net wages). Further, Plaintiff alleged that Defendants applied the same reimbursement formula and rate to all of their delivery drivers during the recovery period.

Counsel for the Parties have previously represented Domino's franchisees and delivery drivers including in this Circuit and in *Rechtoris v. Dough Management Inc et al*, where the Northern District of Indiana recently granted preliminary approval of a settlement covering similar claims.[1] Based on this experience, counsel negotiated an early and efficient resolution structure. The Parties then discussed disclosure of data needed to evaluate liability and damages, followed by mediation.   Defendants produced that data, which Plaintiff's counsel vetted, thoroughly reviewed, and analyzed through detailed spreadsheet calculations.  Based on those calculations, the Parties mediated for a full day with a highly experienced wage and hour and class action

---

[1] The settlement of this matter was also modeled after the settlement previously approved in *Meetz v. Wisconsin Hospitality Group, LLC*, Case No. 16-cv-1313, by this District.

2

mediator, Kay Wolf. This mediation resulted in agreement between the Parties to settle the claims.

Defendants denied and continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff, and further deny that, for any purpose other than settling this matter, this action is appropriate for class or collective treatment. Plaintiff, on the other hand, asserts that Defendants failed to comply with federal and state minimum wage requirements embodied in the FLSA and applicable state wage laws. Class Counsel understands Defendants' position and defenses, but believes Plaintiff, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof. All Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation, which motivated settlement and this Motion. The attorneys who negotiated on behalf of the Parties are experienced litigators, and they vigorously represented their clients' respective interests. Exh. A ¶¶ 7-9. The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals.

## II.    Key Settlement Terms

The Parties have executed a Settlement Agreement (Settlement Agreement"), which has been filed under seal.

The settlement class is defined as:

All persons who have worked as a delivery driver for Defendants between May 5, 2017 and the date the Court grants preliminary approval.

Pursuant to Wisconsin and Illinois state law, and as clarified in the attached amended Class Notice, Class Members that do not return Claim Forms but do not opt-out of the settlement  are

3

only members of the Rule 23 Class, and accordingly will only be bound by a Rule 23 Class release that covers the period from May 5, 2017 to the date the Court grants preliminary approval.

The Parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys' fees, litigation costs, administration costs and a modest service award. All class members who do not opt-out will receive a guaranteed minimum payment. The remaining settlement funds will be distributed to class members who submit claims based on the following equitable formula:

- For each Settlement Class Member, the total number of his/her recorded miles making deliveries for Defendant between May 5, 2017, and the date the Court grants preliminary approval of the Agreement shall be his/her "Individual Miles." The aggregate of all Individual Miles among all Settlement Class Members shall be the "Class Miles."

- Each Settlement Class Member's Individual Miles shall be divided by the Class Miles to obtain his/her "Payment Ratio."

- Each Settlement Class Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Potential Settlement Payment.

Settlement payments to Participating Class Members shall be treated as non-taxable expense reimbursement.

The release binding Class Members who do not opt out is limited to wage and hour claims:

Upon the Effective Date of the Settlement, the Rule 23 Settlement Class Members (other than those who submit valid and timely Exclusion Letters) will release and forever discharge Defendants, and each of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities and causes of action

4

of every nature and description, whether known or unknown, arising on or before the date the Court grants preliminary approval ("Release Period"), arising out of, based on, or encompassed by: (a) the claims that were asserted in any civil complaint filed in this case on behalf of any Settlement Class Member; (b) claims that relate to or arise out of the reimbursement of expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind; (c) claims that relate to or arise out of the payment of the applicable minimum wage, under-payment of the applicable minimum wage, or failure to pay the applicable minimum wage; or (d) claims that arise under Illinois and Wisconsin common law, or any similar state, municipal or local laws. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for res judicata purposes shall be co-extensive with this release of claims.

Based on service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, Named Plaintiff, and early opt-in Plaintiff Jay Schackle seek a modest service award.

Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs equal to one-third (1/3) of the gross settlement amount. Defendants do not oppose or object to this request for attorneys' fees and costs.

The Parties will jointly select a settlement administrator, whose fees will be paid from the gross settlement amount.

A notice of class action settlement (the "Notice") and claim form ("Claim Form") will be mailed to all putative class members as soon as practicable after the Court's preliminary approval of this settlement, the Notice and the Claim Forms are attached hereto as Exhibits. The Parties' proposed Notice should be approved as it explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each delivery driver's right to submit a claim form, object to the settlement, or exclude themselves from the settlement.

The Settlement Administrator will send a notice of preliminary approval and settlement to each class member and each of them will have 50 days after mailing of the notice to submit a claim

form and 30 days after mailing of the notice to file objections or opt out. Class members will also have the opportunity to appear at the final approval hearing to be set by the Court.

## III. Argument

### A.      The Preliminary Settlement Approval Process

Resolution of class action litigation by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Federal Rule of Civil Procedure 23 allows a court to certify a class conditionally or provisionally, for purposes of effectuating a settlement. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig*., 55 F.3d 768, 793-794 (3d Cir. 1995). A Federal Rule of Civil Procedure 23(b)(3) class action may only be approved if: (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co*., 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations and citation omitted). Other factors considered are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability;  the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974).

## B.    Class / Collective Action Certification[2]

To obtain class certification, the proponent of class certification must show the elements required under Fed. R. Civ. P. 23.  Subsection (a) of Rule 23(a) requires:

"(1) the members of the class are so numerous that separate joinder of each member is impracticable ["*numerosity*'];

(2) there are questions of law or fact common to the class ["*commonality*"];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["*typicality*"]; and

(4) the representative parties will fairly and adequately protect the interests of the class ["*adequacy of representation*"].

In addition to Rule 23(a), the party seeking class certification must satisfy one of the alternative requirements of Rule 23(b).  In this case, the pertinent requirement is found in subsection (b)(3), which provides that "…the questions of law or fact common to class members predominate over any questions affecting only individual members ["*predominance*"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["*superiority*"]."  *Id.*

### 1.    Rule 23(a)(1): Numerosity

Plaintiff asserts that his claims satisfy the "numerosity" requirement of Rule 23(a)(1), as the class consists of at least 1000 current and former delivery drivers. Thus, the class is so numerous that separate joinder of each member is impracticable.  *See, e.g. Mulvania v. Sheriff of Rock Isle. Cnty.,* 850 F.3d 849, 859-60 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement.");

---

[2] For purposes of settlement only, Defendants have agreed not to contest the statements made in this motion regarding class and collective action certification.  However, Defendants do not waive, and expressly reserve, any defenses or denials that class certification is proper in this case should the Court not approve the settlement or the settlement not be perfected.

*Swanson v. American Consumer Indus., Inc.,* 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) (even 40 class members "is a sufficiently large group to satisfy Rule 23(a)"); see also Rubenstein, Newberg on Class Actions, § 3:12 ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

2. **Rule 23(a)(2): Commonality**

The "commonality" test requires at least one question of law or fact common to each class member. *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (2011)) ("even a single common question will do."). "The threshold for commonality under Rule 23(a)(2) is not high." *In re: Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, No. 3:13-MD-2439, 2015 WL 12616163, at *2 (E.D. Wis. Oct. 2, 2015).

Here, Plaintiff asserts that all delivery drivers' claims arise out of the same legal theory (sub-minimum wages resulting from under-reimbursed vehicle costs) and the same questions of law and fact central to the claims against Defendants include:

      a.      Whether Defendants' reimbursement method provided sufficient vehicle reimbursements to its delivery drivers;

      b.      Whether the class members' vehicle-related expenses resulted in payment below minimum wage;

      c.      Whether Defendants willfully violated applicable wage and hour laws; and

      d.      Whether Plaintiff and the class members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality.

Moreover, Plaintiff asserts that his claims further satisfy the "commonality" requirement because all class members held the same job, performed the same primary job duty of delivering

pizzas and other food to Defendants' customers using their personal vehicles, were compensated by similar hourly pay rates, drove similar delivery distances, Defendants reimbursed all of them with a comparable mileage rate and/or flat rate per delivery, Defendants did not track their actual vehicle cost, and their claims are based on the same legal theory.

Moreover, Plaintiff asserts that either one of two recognized legal theories applies to all claims.  Under Plaintiff's first theory of liability, Defendants are liable for any minimum wage deficits resulting from unreasonably-low vehicle cost reimbursements. *See, e.g., Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1154 (N.D. Ala. 2018) (rejecting the theory that the IRS rate is the "presumptively reasonable rate" and holding that employers may reasonably approximate expenses to comply with minimum wage requirements); *Perrin v. Papa John's Int'l, Inc. ("Perrin III")*, 114 F. Supp. 3d 707, 711 (E.D. Mo. 2015) (denying summary judgment for plaintiffs on plaintiffs' theory that the IRS standard business mileage rate is the only reasonable approximation of vehicle expenses and leaving question for jury to decide based on all of the evidence); *Perrin v. Papa John's Int'l., Inc. ("Perrin I"),* 2013 U.S. Dist. LEXIS 181749, *20-24 (E.D. Mo. Dec. 31, 2013) (explaining development of applicable law and citing cases).  Under Plaintiff's other legal theory, Defendants are liable for any minimum wage deficits if they neither (1) tracked and reimbursed actual vehicle costs nor (2) reimbursed at the IRS standard business mileage reimbursement rate ("IRS rate").  *Hatmaker v. PJ Ohio,* 2019 U.S. Dist. LEXIS 191790, *5-22 (S.D. Ohio Nov. 5, 2019); *Zellagui v. MCD Pizza, Inc.,* 59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 13, 2014).  Thus, the answer to either one of those two common questions will drive resolution of all claims asserted.

Recently, *Benton v. Deli Mgmt., Inc. d/b/a "Jason's Deli,* refused to decertify a class asserting a similar claim based upon "[t]he existence of so many" commonalities among the class,

"including job descriptions, duties, and pay provisions (e.g., they were all paid hourly), as well as the **central question** of the reasonableness of Jason's Deli's current reimbursement." 2019 U.S. Dist. LEXIS 135522, *45-46 (N.D. Ga. Aug. 8, 2019) (emphasis added). Thus, *Benton* not only recognized that the reasonableness of an employer's reimbursements is a common question, but also recognized that it is the "central question" determinative of every class member's claim. *Id.*

### 3. **Rule 23(a)(3): Typicality**

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Generally, a class representative is considered "typical" when his or her claims arise from the same practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Suppliues, Inc.*, 322 F.R.D. 458, 464 (N.D. Ill. 2017). Although named plaintiffs may satisfy the typicality requirement even if there are "factual distinctions between the claims of the named plaintiffs and those of other class members, the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *McFields v. Sheriff of Cook Cty.,* 2019 U.S. Dist. LEXIS 162934, at *15 (N.D. Ill. September 24, 2019) (*quoting Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotation mark omitted).

Plaintiff alleges that he, just like all of Defendants' other delivery drivers, was not reimbursed for all vehicle expenses pursuant to Defendants' company-wide reimbursement method, which caused minimum wage violations. Thus, under either of the two legal theories described above, Named Plaintiff, just like all of Defendants' delivery drivers, must prove that (a) Defendants failed to track and reimburse actual vehicle costs or reimburse at the IRS standard

business mileage reimbursement rate *or* (b) Defendants provided an unreasonable reimbursement rate. Thus, Named Plaintiff's claims are typical of the claims of all of Defendants' other delivery drivers.

### 4. **Rule 23(a)(4): Adequacy of Representation**

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The two key factors relevant to the determination of adequacy are an absence of potential conflict between the named plaintiff and absent class members, and an assurance of vigorous prosecution on behalf of the class. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Suppliues, Inc.*, 322 F.R.D. at 465; *see also Retired Chi. Police Ass'n. v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993). Thus, for a class to be certified, both the named plaintiff and class counsel must be able to serve the interests of the entire class. *Amchem Prods., Inc*., 521 U.S. at 626 n. 20, 117 S.Ct. 2231.

Named Plaintiff has already demonstrated that he will vigorously champion the class members' rights. He sought counsel experienced in vehicle reimbursement / minimum wage claims, provided his attorneys information about the claims, filed a complaint on behalf of all of Defendants' delivery drivers, and obtained a settlement beneficial to all of them, not just himself. Further, Mr. Rocha's counsel are experienced wage and hour and class action litigators who will ably conduct the litigation, and have done so through this point. Moreover, Mr. Rocha has no interest antagonistic to those of the putative class members.

### 5. **Predominance**

In addition, Plaintiff contends that the claims satisfy Rule 23(b)(3), in that common questions of law or fact predominate over any question of law or fact affecting only individual members of the class. The primary consideration in assessing predominance is the proof necessary to establish

the class members' claims under the applicable substantive law. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir.1993). Again, regardless of the applicable legal standard, that same legal standard will be applied class-wide. As explained above, *Benton* recently recognized that the "central" and predominant question dispositive of all class members' claims is the reasonableness of an employer's vehicle reimbursements, and Plaintiff asserts that this eclipses any differences between class members that an employer can identify. *Id.*, 2019 U.S. Dist. LEXIS 135522, at *45-46.

**6.      Superiority**

Finally, Plaintiff contends that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. "Assessing in a single proceeding the extent of [defendants'] liability, if any, for unpaid travel time and overtime owed to all of the proposed class members is superior to litigating dozens of individual wage-and-hour claims." *Laughlin*, 2018 WL 2538356, at *7 (*citing Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008). There is no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt out of the Parties' settlement. Counsel for the Parties are unaware of any other pending litigation against Defendants entailing the same claim. For purposes of settlement, the class is manageable, it can easily be identified from Defendants' own records, a class action will foster judicial economy by avoiding duplicative litigation, and a class action will ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented. These same considerations have warranted class certification in similar claims by pizza delivery drivers. *See, e.g., Perrin I,* 2013 U.S. Dist. LEXIS 181749, at *25-26; *Bass v. PJCOMN, Inc.,* 2011 U.S. Dist. LEXIS 58352, *10-11 (D. Colo. Jun. 1, 2011).

## C. Certification of the FLSA Collective Action

This District recognizes three factors in certifying an FLSA collective action: "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear to be individual to each plaintiff, and (3) fairness and procedural considerations." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir.2013).

Here, all class members performed the same primary job duty of delivering pizzas and other food to Defendants' customers using their personal vehicles, they were compensated by similar hourly pay rates, drove similar delivery distances, Defendants reimbursed them with the same or comparable rate per mile and/or delivery, and their claims are based on the same legal theory. As discussed more fully above, Plaintiff asserts that employees may recover vehicle costs when the employer's estimation of such costs is unreasonable, and the shortfall results in minimum wage deficits. Alternatively, Plaintiff asserts that Defendants must either track and reimburse actual vehicle costs or reimburse at the IRS rate. Either way, the same legal standard will apply class-wide. This is sufficient to warrant certification of Plaintiff's FLSA claim for settlement purposes.

## D. The Court Should Preliminarily Approve the Settlement

At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of possible approval." *In re: National Collegiate Athletic Association Student-Athlete Concussion Injury Litig..,* 314 F.R.D. 580, 588 (N.D. Ill. Jan. 26, 2016) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir.1982)). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *Id*. (citing Manual for Complex Litigation, Third, § 30.42 (West 1995) ("A presumption of

13

fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

The traditional means for handling wage claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. *Id.* The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)      Preliminary approval of the proposed settlement at an informal hearing;
(2)      Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3)      A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, § 11.22, *et seq.*

The Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice of the settlement's terms should be issued to the Class and a formal fairness hearing scheduled. *Id.,* 11.25 at 11-36, 11-37. Thus, at this stage, the district

court decides whether the proposed settlement falls "within the range of possible approval." *See Gautreaux v. Pierce*, 690 F.2d 616, 621 (7th Cir. 1982).

In deciding whether to give preliminarily approval to the settlement, the court considers the strength of plaintiffs' case compared to the settlement amount; the complexity, length and expense of the litigation; any opposition to settlement; the opinion of competent counsel; and the stage of the proceedings (including the amount of discovery completed) at the time of settlement. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See, e.g., In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2008 WL 11358136, at *6 (N.D. Ill. Jan. 3, 2008) (preliminary approval inquiry often involves an informal presentation of the parties' proposals to the court). Here, preliminary approval of the Settlement Agreement is warranted.

1.  **Factor 1: The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlement**

Plaintiff's claim is supported by substantial evidence, but ultimately that claim may depend upon persuading a jury to adopt her evidence over Defendants' competing evidence and arguments. As some courts recognize, all claims may depend on competing expert vehicle costing testimony. *Perrin v. Papa John's Int'l., Inc. ("Perrin II"),* 2014 U.S. Dist. LEXIS 133974, *12 (E.D. Mo. Sept. 24, 2014) (recognizing battle of vehicle costing experts); *Villalpando,* 2016 Dist. LEXIS 53773, at *45. "This would have resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class—exactly the type of litigation the parties were hoping to avoid by settling." *Wong v. Accretive Health, Inc*., 773 F.3d 859, 863 (7th Cir. 2014) Also, Plaintiff's claim may depend on what test the Court decides to apply. *Compare, e.g., Sullivan*

*v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1154 (N.D. Ala. 2018); *Perrin II,* 2014 U.S. Dist. LEXIS

133974, at \*12 (battle of experts over reasonableness of employer's vehicle reimbursement rate)

*with Hatmaker* (employer must either reimburse actual vehicle costs or reimburse at the IRS rate).

Indeed, "it is virtually impossible to predict with certainty which testimony would be credited…".

*In re Warner Comm'ns. Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d

Cir. 1986).

      Further, on August 31, 2020, the Department of Labor issued an Opinion Letter (FLSA2020-12)

concerning employers' reimbursement of expenses for delivery drivers.  *See* FLSA2020-12.  The DOL

Opinion Letter specifically provides that the reimbursement of vehicle-related expenses pursuant to the IRS

mileage rate is not a mandate upon employers.  *See also Blose v. Jarinc, Ltd. et al.*, Case No. 1:18-cv-2184-

RM-SKC (D. Colo. Sept. 14, 2020) (finding employer was allowed to "reasonably approximate" vehicle

expenses and did not have to reimburse plaintiff pursuant to the IRS mileage rate); *see Kennedy v.*

*Mountainside Pizza, Inc.*, Case No. 1:19-cv-1199-CMA-STV (D. Colo. Aug. 26, 2020) (accord).

      Predicting how a jury would weigh the evidence here is particularly difficult because no

known benchmarks exist for how a jury might decide or value the claims.  Consequently, it is

possible the class members would recover less than the damages they allege, or no damages at all.

Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured

recovery obtained through negotiation.  In sum, the uncertainty of a jury trial warrants settlement

approval.

      Plaintiff further recognizes some risk of denial of class certification. *See Sullivan v. PJ*

*United, Inc.,* 2018 U.S. Dist. LEXIS 143236 (N.D. Ala. Jun. 22, 2018).  Plaintiff's counsel weighed

that risk in negotiating the settlement amount.

## 2.  Factor 2:  The likely complexity, length and expense of continued litigation

      District Courts in this Circuit have acknowledged that class actions can be "time-

consuming and expensive." *Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2009 WL 3380354, at *11 (E.D. Wis. Oct. 20, 2009). This case is no exception. As explained above, this litigation involved complex and novel issues. This litigation may be expensive, both to the Parties in terms of expert costs and time and to the Court in terms of deciding difficult and complex issues. By reaching a favorable settlement now, the Parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

### 3. Factor 3: The amount of opposition to settlement among affected parties

Plaintiff's counsel are presently unaware of any opposition to the settlement. They have observed the extreme rarity of objections to similar settlements in numerous similar cases. In any event, this factor can be further considered after notice and opportunity to object.

### 4. Factor 4: The opinion of competent counsel

Counsel for both sides fully support the Settlement Agreement, and this factor favors preliminary approval of the Settlement. In deciding whether to approve the settlement, the court is "entitled to give consideration to the opinion of competent counsel." *Isby v. Bayh,* 75 F.3d 1191, 1200 (7th Cir. 1996). When evaluated in light of the relevant factors, the proposed settlement is fair, reasonable, and adequate and should be approved.

### 5. Factor 5: The stage of the proceedings and amount of discovery completed

Although this claim settled early, counsel for the Parties have litigated several similar claims by pizza delivery drivers around the nation. Thus, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate potential damages. That data was

disclosed, then utilized to evaluate both potential liability and various damage scenarios. The Parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

6. **Additional Factor for FLSA Collective Action: Existence of *Bona Fide* Dispute**

To effectuate a binding release, a settlement of FLSA claims requires judicial or U.S. Department of Labor approval of FLSA settlements. *Woods v. Club Cabaret, Inc.,* 2017 U.S. Dist. LEXIS 198896, *14 (C.D. Ill. May 17, 2017) (recognizing that private settlements of FLSA claims are invalid); *Hernandez v. Cameo Invs., LLC,* 2019 U.S. Dist. LEXIS 186445, *2-3 (W.D. Wis. Oct. 28, 2019) (citing *Walton v. United Consumers Club,* 786 F.2d 303, 306 (7th Cir. 1986) (same).

Courts in this district have approved FLSA collective actions settlements which were found to be "a fair and reasonable resolution of a bona fide dispute" under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq. See, e.g., Soto v. Wings 'R Us Romeoville, Inc.*, No. 15-CV-10127, 2018 WL 1875296, at *1 (N.D. Ill. April 16, 2018) (citing *Lynn Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) and *Walton v. United Consumers Club, Inc*., 786 F.2d 303, 306 (7th Cir. 1986)). "'[A]pproval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements.'" *Hall v. High One Machs., Inc.,* 2016 U.S. Dist. LEXIS 131009, *11 (E.D.N.C. Sept. 26, 2016) (quoting *DeWitt v. Darlington Cnty.,* 2013 U.S. Dist. LEXIS 172624, *10-11 (D.S.C. Dec. 6, 2013)).[3]

Here, Plaintiff alleged that under-reimbursed automobile expenses caused minimum wage violations. Defendants deny Plaintiff's substantive allegations, assert that Plaintiff was reasonably

---

[3] Some courts hold that "[b]ecause 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* [approval] factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Op. Corp.,* 2017 U.S. Dist. LEXIS 216246, *14-15 & 20 (E.D.N.Y. Aug. 7, 2017) (quoting and citing cases).

reimbursed for vehicle costs, and contend that Plaintiff was compensated at or above the applicable minimum wage. Thus, the claims were actually in dispute.

Defendants produced, and the Parties analyzed, detailed data specific to Plaintiff's allegations of liability and damages. If a jury agreed with Plaintiff's allegations about a reasonable reimbursement rate, Defendants could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiff's attorneys' fees and costs. On the other hand, if a jury agreed with Defendants about a reasonable reimbursement rate, Plaintiff would obtain no recovery whatsoever. These facts clearly demonstrate the existence of a *bona fide* dispute.

The settlement is fair and reasonable for the same reasons explained above.

### E. Attorney's Fees and Costs Provided in the Settlement are Appropriate

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the Settlement Amount. The FLSA and Illinois wage and hour law each contain fee and cost shifting provisions. The Seventh Circuit recognizes that the purpose of fee shifting is to "assure competent representation for plaintiffs" and to enable plaintiffs to vindicate their rights. *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 643 (7th Cir. 2011) (quoting *In re Cont'l. Ill. Sec. Litig.,* 962 F.2d 566, 573 (7th Cir. 1992)) (purpose of fee-shifting is to assure competent representation"); *Kovacs v. U.S.,* 739 F.3d 1020, 1027 (7th Cir. 2014) (recognizing that fee-shifting serves "an important public-interest function … by making it possible for persons without means to bring suit to indicate their rights."). Simply stated, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund

for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir. 1999). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The settlement agreement here authorizes an award of fees equal to one-third (1/3) of the total settlement amount. Under a common fund theory in this district, an award of attorneys' fees should be calculated based upon the total funds made available. *Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825 2020 WL 969616 at *6 (N.D. Ill. February 26, 2020) (*citing Masters v. Wilgelmina Model Agency, Inc.,* 473 F.3d, 423, 437 (2d Cir. 2007*); see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 480, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (stating that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.") Courts in this Circuit have found that an award within this range falls within the normal percentage range of common fund attorney fee awards approved by courts. *Young*, 2020 WL 969616 at *6.

To ensure a fee award is reasonable, this Circuit considers "the *Hensley* factors:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasting, Inc.,* 578 F.3d 542, 544 & n. 1 (7th Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 430 n.3 (1983).

1. ***Hensley* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.**

As set forth above, the legal theories at issue in this case are relatively novel and continue to be clarified through litigation in various Districts. Even aside from the unique complexities presented by this case, Plaintiff would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for Plaintiffs. Regardless, of the outcome at trial, post-judgment appeals would be likely. Despite these specific and general challenges, Plaintiff's counsel possess extensive experience in analogous cases. Haynie Decl., ¶¶ 7-9, Leniski Decl., ¶¶ 6-8. This experience was leveraged here, as in other cases, to produce an efficient outcome for all involved (including the judicial system). In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Hensley* factors (2), (3), (9) and (10) all strongly support Plaintiff's counsels' requested fee.

2. ***Hensley* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.**

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award. *Hensley*, 461 U.S. at 436; *Robinson v. Perales,* 894 F.3d 818, 835 (7th Cir. 2018) (following *Hensley* and *Farrar v. Hobby,* 506 U.S. 103, 108 (1992)). *Hackett* particularly noted that "[c]hallenging compensation for pizza delivery drivers under the FLSA is not a cut and dried affair." *Id.*, 259 F. Supp. 3d at 369. *Hackett* further found that it is particularly appropriate to award Plaintiffs' counsel lodestar rates because due to the uncertain nature of

challenging compensation for delivery drivers under the FLSA, "it is quite likely that, but for this lawsuit, [Defendants'] drivers in Defendants' stores would not have known that they had a viable cause of action and thus, in the end, received more compensation than they anticipated." *Id.*

Given the novelty and difficulty of cases involving minimum wage laws based on under-reimbursed vehicle costs, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the Parties following contentious mediation and subsequent negotiations is a very successful result for Plaintiff and all other delivery drivers. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the class. Some class members will receive substantial payments for their alleged unreimbursed vehicle expense. And while some class members will receive less than others – based on relatively fewer miles driven within the applicable recovery period – all class members will receive a minimum payment as defined in the Settlement Agreement.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiff's Counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the named Plaintiff signed a contingency fee agreement with Plaintiff's Counsel agreeing to fees equaling 40% of the common fund. However, Plaintiff's Counsel cut their percentage to one-third (1/3) in an effort to resolve this case and increase the amount paid to Plaintiffs.

### 3. *Hensley* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.

To date, Plaintiffs' counsel's firms combined have spent significant time litigating this case with no assurance of any recovery at all. This includes time spent investigating the facts, preparing and filing pleadings; reviewing documents produced by the named Plaintiff and by Defendants;

analyzing Defendants' delivery, mileage and reimbursement data; communicating with the named Plaintiff; creating computerized damages models; researching and drafting a mediation statement; participating in the mediation; negotiating the terms of the settlement; drafting approval papers; and seeking Court approval of the settlement.

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiff's counsel will be required to expend significant additional time connected with administering the settlement, including communicating with numerous individual Plaintiffs.

### 4. *Hensley* Factor (12): Awards in Similar Cases.

Plaintiff's counsel's fees equal to one-third (1/3) of the total recovery have been approved in the same types of claims against other pizza delivery companies. *See, e.g., Wilson v. DFL Pizza, LLC,* 2019 U.S. Dist. LEXIS 114039, *12 (D. Colo. Jul. 10, 2019) (awarding one-third fees); *Kirkwood v. Noble Food Grp., Inc.,* 2019 U.S. Dist. LEXIS 10146, *1-4 (W.D. Wash. Jan. 22, 2019) (same); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920, *12-15 (D. Ariz. Jun. 9, 2017) (same); *Hoffman,* 2017 U.S. Dist. LEXIS 459, at *30 (same); *Hackett,* 259 F.Supp.3d at 367-69 (same); *Prince v. Perfect Delivery, Inc.*, Case No. 8:17-c-01950-AMQ (D.S.C. Jul. 23, 2018) (ECF No. 62), at 10-11 (same).

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the

percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiff's counsel in obtaining relief for all Defendants' delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

**F.    Named Plaintiff Deserves a Service Award**

Service awards, also known as "incentive awards," "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir. 2001). *See also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) ("[A] named plaintiff is an essential ingredient of any class action," therefore, "an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.").

To determine if an incentive award is warranted, a district court evaluates "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* The modest service award sought for Mr. Rocha should be approved because he substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. He was responsible for initiating this action and provided guidance and assistance on numerous occasions to Plaintiffs' counsel. Mr. Rocha sought and retained experienced counsel, filed this case, provided information necessary to prosecute the case, and had numerous phone calls and email communications with counsel. He also participated in the settlement process. Therein, Mr. Rocha advocated for *all* of the delivery drivers. There is no question that the other delivery drivers have substantially benefited from his actions. Without his efforts, this case would not have been brought and this settlement would not have been achieved.

In light of these efforts, payment of a service award in the amount reflected in the attached Settlement Agreement is amply justified. Defendant does not oppose the requested service award. *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, *35-36 (S.D. Ind. Mar. 30) (surveying incentive awards granted within the Seventh Circuit ranging from $5,000.00 to $100,000.00 and awarding the named plaintiff a $10,000.00 incentive award).

Importantly, Mr. Rocha will provide a general release as additional consideration for a service award, which is another reason to approve that award. *See, e.g., Slaughter v. Wells Fargo Advisors, LLC,* 2017 U.S. Dist. LEXIS 123535, *41 (N.D. Ill. Aug. 4, 2017).

Defendants do not oppose the service award.

## G.    The Court Should Approve the Proposed Collective Action Class Notice

To approve a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Here, the notice of settlement and the claim form will be mailed to class members at their last known addresses, complying with the highest level of notice recognized by law.

The Notice explains in clear terms (1) the nature of the settlement and the claims released, (2) the minimum amount each class member has been allocated, and (3) the opportunity to include or exclude oneself or object to the settlement.  The Notice informs class members of the terms and provisions of the settlement agreement; the relief the settlement will provide; the need to submit a claim form in exchange for enhanced recovery; the scope of the releases; the date, time and place of the final approval hearing; and the procedures and deadlines for submitting comments or objections. Additionally, the proposed class notice advises class members of the amount of fees and costs that Plaintiff's counsel seek and the amount of the proposed service award to be paid to the named Plaintiff who substantially aided in the prosecution of the case.

The proposed class notice is accurate and fully informs class members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form and method of class notice of first-class mail to each class member's last-known address.

## IV.    Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

(a)    certifies a class action for purposes of settlement;

(b)    certifies an FLSA collective action for purposes of settlement;

(c)    preliminarily finds that the Parties' settlement of the Illinois and Wisconsin class claims appears to be fair, reasonable, and adequate as to members of the class, subject to any objections that may be raised at the final fairness hearing and final approval of the class settlement by this Court;

(d)    finds that the Parties' settlement of the FLSA claim appears to be fair, reasonable, and adequate as to members of the collective action,

(e)    grants preliminary approval of the Illinois and Wisconsin class action settlement;

(f)    grants approval of the FLSA collective action settlement;

(g)    approves as to form and content the Parties' proposed notice and claim form as reasonable notice practicable under the circumstances and in full compliance with applicable law;

(h)    orders that each class member be given a full opportunity to file a claim, object to, or opt out of the Settlement Agreement, and to participate at the final approval hearing;

(i)    schedules a final fairness hearing; and

(j)    awards such further relief as the Court deems equitable and just.

RESPECTFULLY SUBMITTED,

/s/ Meredith Black-Mathews_____
**Meredith Black-Mathews**

**FORESTER HAYNIE PLLC**
400 N. St. Paul Street, Suite 700
Dallas, TX 75201
Phone: 214-210-2100
Fax: 214-346-5909
Email: mmathews@foresterhaynie.com


**ATTORNEYS FOR PLAINTIFF AND
THE PROPOSED CLASS**

-and-

/s/ Joel W. Rice_____
Joel W. Rice
FISHER & PHILLIPS LLP
10 S. Wacker Drive, Suite 3450
Chicago, Illinois 60606
Telephone: (312) 346-8061
Facsimile: (312) 346-3179
jrice@fisherphillips.com

**ATTORNEYS FOR DEFENDANTS**


**CERTIFICATE OF SERVICE**

A copy of the foregoing document was electronically served on all counsel of record.

/s/ Meredith Black-Mathews
Meredith Black-Mathews