IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JACIEL ROCHA**, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**CHIODO CORPORATION** et. al.,<br><br>Defendants. | Case No. 1:20-cv-1902<br><br>Judge Steven C. Seeger |

**PLAINTIFF'S AMENDED UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

**I. INTRODUCTION**

On May 21, 2021, the Court entered an Order that certified a class of Defendants' delivery drivers, approved the Parties' FLSA collective action settlement, preliminarily approved the Parties' class action settlement, and authorized notice of the Settlement to be sent to Class Members. Pursuant to that Order, the Parties, through the third-party administrator, sent the approved Notice of Class Action Settlement and Claim Form to all Settlement Class Members and no Class Member has objected to any aspect of the Settlement. Plaintiff subsequently moved the Court for final approval of the Parties' Class Action Settlement. On September 7, 2021, the Court held a final Fairness Hearing as scheduled when it asked the Parties to modify the original final approval submission, Dkt. #71, to include the additional information provided herein. Plaintiff hereby submits this additional and amended brief to Dkt. #71 and as directed in Dkt. #72. This case is at the final stage, Plaintiff's Motion is unopposed, and the relief requested should be granted for the additional reasons that follow.

## II. THE SETTLEMENT NOTICE PROCESS

Pursuant to the Court's May 21, 2021 Order, the Parties, through the third-party administrator ("CAC"), sent the approved Notice of Class Action Settlement and Claim Form to 1,134 Settlement Class Members:

a. On June 11, 2021, CAC received from Defendants an electronic list of 1,134 persons identified as potential Settlement Class members. *See* **Declaration of Nancy Johnson** p. 2, ¶ 6.a.

b. The Settlement Class Member List was updated using the National Change of Address system (NCOA). *See* **Declaration of Nancy Johnson** p. 2, ¶ 6.b.

c. On June 29, 2021, 1,134 Notice Packets, comporting with each of the individuals listed on the Settlement Class Member List, were mailed. *See* **Declaration of Nancy Johnson** p. 2, ¶ 6.c.

During the notice period:

a. 134 of Notice Packets were returned to CAC by the U.S. Postal Service without forwarding addresses. For these Notices Packets, an address search found 101 new addresses. The Settlement Class Member List was subsequently updated with the new addresses and a Notice Packet was re-mailed to these Settlement Class Members at each of the new addresses. As a result of this good faith effort to re-mail those notices returned for non-delivery, just 33 Notice Packets were undeliverable.[1] *See* **Declaration of Nancy Johnson** p. 3, ¶ 8; *see also* **Administrator's Status Report.**

---

[1] All of these individuals are still able to claim the full amount of their FLSA settlement through the Reserve Fund and will receive minimum payments from the Rule 23 fund.

2

    b. CAC received 171 Claim Forms, approximately 15%[2] of Settlement Class Members. *See* **Declaration of Nancy Johnson** p. 3, ¶ 9; *see also* **Administrator's Status Report.**

    c. CAC received zero Requests for Exclusion. *See* **Declaration of Nancy Johnson** p. 3, ¶ 10.

    d. CAC received zero Objections. *See* **Declaration of Nancy Johnson** p. 3, ¶ 11.

Guided by the results of this notice process and by the factors previously presented to this Court in connection with preliminary approval, Dkt. #56, final approval is warranted.

### III. THE CLASS ACTION SETTLEMENT SHOULD BE FINALLY APPROVED

There is a three-step process for approval of class action settlements:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement to all affected class members; and

3. A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34.. This case is now at the final stage, the request for final approval of the class action settlement is wholly unopposed, and Plaintiff's Motion should be granted for the additional reasons that follow.

#### A. <u>General Terms</u>

The Parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys' fees, litigation costs, administration costs and a modest service award to the Named Plaintiff and Early Opt-In Plaintiff. Each class member will receive a minimum payment. The remaining settlement funds

---

[2] This level of participation is in line with prior pizza delivery driver class actions. *See e.g.*, *Smith v. Southeastern Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D. N.C.)(20% opt-in rate); *Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN.)(21%); *Ball v. New River Valley Pizza, LLC, et al*, Case 7:19-cv-362 (W.D. VA.)(16%); and, *Fitzgerald v. Roman's Road Pizza, Inc. et al.*, Case No. 4:20-cv-577 (E.D. MO)(15%).

will be distributed to the class members who have submitted claims or choose to submit claims during the Reserve Fund period, pursuant to the FLSA's opt-in provisions and portion of the settlement that the Court has already approved. *See* **Declaration of Jay Forester** pp. 6-7, ¶ 15.

The release binding Class Members who did not opt in is limited to wage and hour claims pursuant to the state wage laws and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Authorized claimants, who have affirmatively opted-in to the FLSA settlement that was previously approved, have also agreed to release federal wage and hour claims pursuant to the federal Fair Labor Standards Act ("FLSA") and in exchange for additional and individualized consideration. The Parties have fully complied with the terms of the Court's Order approving the FLSA settlement, remain committed to fully and fairly administering the settlement distribution to the Class, and have further agreed to administer a six-month Reserve Fund Period in the continued interest of the Class Members and judicial economy.

**B. Monetary Terms**

Pursuant to the Agreement, the Total Settlement Amount is $299,505.00. If approved by the Court, the Net Settlement Fund is $157,373.60,[3] which reflects the total amount allocated to Delivery Drivers after the subtraction of the Settlement Administrator fees and costs, Court-approved payments to Plaintiffs, Court-approved attorneys' fees and costs, and the Reserve Fund. *See* **Declaration of Jay Forester** pp. 6-7, ¶ 15. Under the Settlement, all drivers will receive a minimum payment and all Class Members that have yet to make a claim will remain eligible to claim their full share of the FLSA Fund for six more months, through the Reserve Fund Period. Pursuant to the Agreement, the Net Settlement Fund will be distributed as follows:

    1.    The 171 Authorized Claimants, approximately 15%[4] of Settlement Class

---

[3] Pursuant to the Agreement, the original fund of $156,126.00 will be supplemented by $1,247.60 of unused Third Party Administrator funds.

[4] This level of participation is in line with prior pizza delivery driver class actions. *See e.g.*, *Smith v. Southeastern*

4

    Members, will receive $44,850.40 of the Net Settlement Fund. Distribution of these funds will be based on total delivery miles driven by each Authorized Claimant.

2. The Remaining 963 Class Members that neither affirmatively chose to opt-in nor out of the Agreement, will receive $44,000.00 of the Net Settlement Fund or an average minimum payment of $45.69.[5] These individuals that did not also affirmatively opt-in to the settlement will retain all rights under federal law and pursuant to the FLSA's opt-in provisions.

3. The $68,523.20[6] remaining following the initial distribution of the Settlement Funds will be held in the Reserve Fund. Under the terms of the Settlement Agreement, all Settlement Class Members who have neither excluded themselves from the settlement nor Opted-In to the Settlement remain eligible to submit a claim for up to the full amount of their share of the FLSA Settlement Fund from this fund for an additional six months.

The negotiated recovery here falls well within the range of comparable settlements approved around the nation in comparable wage and hour claims,[7] the specific Settlement structure has been

---

*Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D. N.C.)(20% opt-in rate); *Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN.)(21%); *Ball v. New River Valley Pizza, LLC, et al*, Case 7:19-cv-362 (W.D. VA.)(16%); and, *Fitzgerald v. Roman's Road Pizza, Inc. et al.*, Case No. 4:20-cv-577 (E.D. MO)(15%).

[5] $44,000.00 Rule 23 Fund / 963 Rule 23 Class Members. *See Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI)(recently and finally approving a hybrid settlement for delivery drivers with a similar and proposed $35.00 minimum payment).

[6] This Fund has been supplemented by $1,247.60 of unused Third Party Administrator funds.

[7] From 2018-2020, the average applicable IRS rate was approximately $.5667 or, on average, $.1767 more per mile than Defendants' drivers received. The Settlement equates to an additional $.084 per mile average recovery ($.474-$.39 = $.084) $.084/$.1767 = 47.5%. *See Chenkus et al. v. Prairie Pizza, Inc.*, Case No. 3:17-cv-723 (W.D. N.C.)(approving claims-made settlement based on model of $.315 and $.0495 additional recovery); s*ee also*, *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (26% or greater recovery sufficiently reasonable in wage and hour dispute); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (30% or greater recovery in wage and hour dispute constituted a "tangible monetary benefit" for the class members); *Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI)(40% recovered); *Burton v. AMNJ Enterprises, Inc. et al.*, Case No. 2:19-cv-164 (E.D. WI)(38%).

informed by Counsel's experience that many drivers wait until after their employment terminates or checks are distributed to claim funds, and should be approved.

### C. The Settlement Satisfies Relevant Standards

At this final stage, courts consider six factors: "'(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Shah v. Zimmer Biomet Hldgs.,* 2020 U.S. Dist. LEXIS 89141, *5-6 (N.D. Ind. May 21, 2020) (quoting *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863 (7th Cir. 2014); citing FED. R. CIV. P. 23(e)(2) (enumerating factors for courts to consider in determining whether a settlement is fair, reasonable and adequate)). Here, all six factors strongly indicate that final approval of the class action settlement is warranted.

**Factor 1:** **The strength of the case for Plaintiffs on the merits, balanced against the extent of settlement offer**

Plaintiffs' claims are supported by substantial evidence, but ultimately that claim may depend upon persuading a jury to adopt their evidence over Defendants' competing evidence and arguments. Here, the case may also come down to a battle between experts' evaluation of what a "reasonable" reimbursement rate would have been. Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiffs and their counsel necessarily, and properly, weighed the risk of proceeding against an assured recovery obtained through negotiation. Plaintiffs further recognize some risk of denial of class certification. Plaintiffs' counsel weighed that risk in negotiating the settlement structure as well. A balancing of the strength of Plaintiffs' case on the merits against the extent of the settlement offer weighs heavily in favor of settlement approval.

**Factor 2: The complexity, length and expense of further litigation**

District Courts in this Circuit have acknowledged that class actions can be "time-consuming and expensive." *Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2009 WL 3380354, at *11 (E.D. Wis. Oct. 20, 2009). For example, Class Counsel filed *Colon v. EYM Pizza of Illinois, LLC*, Case No. 1:18-cv-05743 in this District in August of 2018. After a very contentious certification fight and delays brought on by Covid, that matter is still pending though it was filed more than a year prior to this case.

Here and despite the fact that this case has been pending during the entirety of the pandemic, the Parties have worked diligently to reach this final stage in less than half the time of that pending matter. By reaching a favorable settlement now, the Parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. Making substantial monetary relief available now, during a pandemic, and through the Contingent Fund period, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

**Factors 3 & 4: The amount of opposition to the settlement and the reaction of members of the class to the settlement**

After dissemination of the Court-approved notice, no class member has objected to any term of the settlement, which indicates that the class is generally pleased with the result. *See, e.g., Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement). Furthermore, zero class members elected to opt out of the settlement.

**Factor 5: The opinion of competent counsel**

Courts place significant weight on the endorsement of experienced class counsel. *In re Mexico*

7

*Money*, 164 F. Supp. 2d at 1020, 1019 (N.D. Ill. 2000). Counsel for both sides fully support the Settlement Agreement, and this factor favors final approval of the Settlement. *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 197 (N.D. Ill. 2018).

**Factor 6:** **The stage of the proceedings and amount of discovery completed**

Class Counsel has litigated numerous similar claims by delivery drivers around the nation. *See* **Declaration of Jay Forester** pp. 1-3, ¶ 1, 3, 5-6. Because of this experience, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate potential damages. That data was disclosed, then utilized to evaluate both potential liability and various damage scenarios. The Parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

## IV. ATTORNEYS' FEES ARE APPROPRIATE

The Settlement Agreement provides that Plaintiffs' counsel will recover their fees from the Settlement Fund. After deduction of $3,738.72 in costs, Plaintiff's Counsel seeks recovery of [8]$95,643.28 or less than 32% of the total settlement fund. Plaintiff's Counsel accepted this case on a contingency fee basis and has worked diligently to obtain relief for minimum wage workers despite a global pandemic. *See, e.g., Gaskill v. Gordon,* 160 F.3d 361, 362-63 (7th Cir. 1988) ("The typical contingent fee is between 33 and 40 percent"); *McDaniel v. Qwest Commun's. Corp.,* 2011 U.S. Dist. LEXIS 154591, *11-12 (N.D. Ill. Aug. 29, 2011) ("the real-world market range for contingent fee cases is 33% to 40%).

The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee

---

[8] $99,382.00 - $3,738.72

8

from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Seventh Circuit and this District widely recognize the reasonableness of an attorney fee award as a percentage of the common fund. *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 563 (7th Cir. 1994); *Furman v. At Home Stores LLC*, 2017 WL 1730995 (N.D. Ill. May 1, 2017); *Briggs v. PNC Financial Services Group*, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016); *Koszyk v. Country Financial*, 2016 WL 51909196 (N.D. Ill. Sept. 16, 2016). Based on this precedent, Plaintiff submits that the attorneys' fees request of less than 32% of the common fund is fair, reasonable, and should be approved.

To further ensure a fee award is reasonable, this Circuit considers "the *Hensley* factors:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasting, Inc.,* 578 F.3d 542, 544 & n. 1 (7th Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 430 n.3 (1983).

### *Hensley* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.

To date, even when staff, subordinate attorney, and duplicative time[9] is wholly excluded, Plaintiffs' counsel has already spent over 110 hours litigating this case with no assurance of any recovery at all:

| Attorney | Position | Hours | Hourly rate | Value of services |
|---|---|---|---|---|
| J. Forester | Founding Partner | 47.5 | $600.00 | $28,500.00 |

---

[9] For purposes of this lodestar calculation, Counsel excluded all time incurred by Plaintiff's Counsel between the initial preliminary approval hearing and the date preliminary approval was granted (November 16, 2020 and May 21, 2021) as duplicative.

9

| Meredith Mathews | Head of Wage & Hour | 82.0 | $500.00 | $41,000.00 |
| --- | --- | --- | --- | --- |
| Totals | | 129.5 | | $69,500.00 |

Even when no accounting is done for additional time to be incurred throughout the Contingent Fund Period, a lodestar cross check already produces a multiplier under 1.4[10] and below the lower range of multipliers approved in this Circuit. *See, e.g., Ramsey v. Philips N. Am. LLC,* 2018 U.S. Dist. LEXIS 226672, *12 (S.D. Ill. Oct. 15, 2018) ("in risky litigation such as this, lodestar multiplier can be reasonable in a range between 2 and 5") (quoting *Spano v. Boeing Co.,* 2016 U.S. Dist. LEXIS 161078, *11 (S.D. Ill. Mar. 31, 2016)).

Accounting for time to be incurred throughout the six-month-long Contingent Fund Period, the multiplier is below 1 and the fees requested will compensate for time actually incurred.[11] These facts and factors support final approval of the Settlement.

> ***Hensley* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.**

Plaintiffs' counsel possess extensive experience in all types of wage and hour litigation. Plaintiff's counsel has years of experience in wage and hour law, and specifically representing minimum wage workers who are delivery drivers. *See* **Declaration of Jay Forester** pp. 2-4, ¶ 3-6. The litigation involves very specific and novel questions of law, an area where relatively few attorneys have experience. The minimum wage nature of this litigation and limited individual damages at issue also discourages many other wage and hour attorneys from taking on these cases. This area of the law is not well-settled, and as a result, not many attorneys are willing to take on this type of litigation, even on a class basis. In light of the novelty and difficulty of the questions

---

[10] $95,643.28/$69,500.00 = 1.38
[11] $95,643.28/(179.5 projected final hours = $534.32 blended hourly rate for Forester and Mathews.

10

presented, the skill, experience, reputation, and ability of Plaintiffs' attorneys, and "undesirability" of the case, *Hensley* factors (2), (3), (9) and (10) all strongly support Plaintiffs' counsels' requested fee.

### *Hensley* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award. *Hensley*, 461 U.S. at 436; *Robinson v. Perales,* 894 F.3d 818, 835 (7th Cir. 2018) (following *Hensley* and *Farrar v. Hobby,* 506 U.S. 103, 108 (1992)).

As noted above, given the novelty and contested nature of the issue at hand, the Delivery Drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Additionally, all class members will receive some form of payment. Some class members will receive substantial payments for their alleged underpayment of reimbursement expenses, based on their affirmative decision to opt into the settlement and their individual mileage information. In addition, class counsel has negotiated a separate Reserve Fund, which will provide additional opportunities for Class Members to collect funds without incurring the delay or costs of additional litigation.

### *Hensley* Factor (12): Awards in Similar Cases.

Notably, the percentage method is approved in this Circuit, this District, and is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients. *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 563 (7th Cir. 1994); *Furman v. At Home Stores LLC*, 2017 WL 1730995 (N.D. Ill. May 1, 2017); *Briggs v. PNC Financial Services Group*, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016); *Koszyk v. Country Financial*, 2016 WL 51909196 (N.D. Ill. Sept. 16, 2016). Compensating counsel in common fund

11

cases on a percentage basis makes good sense. It rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. The diligent and highly efficient work by Plaintiffs' counsel in obtaining relief for the Delivery Drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and issue an Order:

(1) Finding that, for the purpose of this Settlement,

    a. the requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied, and that a class action is an appropriate method for resolving the disputes in this litigation.

    b. The Class Members are ascertainable and too numerous to be joined. For purposes of settlement, there are questions of law and fact common to all Class Members, these issues predominate over individual issues, and should be determined in one proceeding with respect to all Class Members.

    c. This class action is appropriate and the superior mechanism for adjudicating and resolving this action.

(2) finding that Defendants have complied with all their obligations pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA") with respect to this class action settlement;

(3) approving payment of the costs of the Settlement Claims Administrator in the amount of $13,752.40;

(4) approving Service Payments in the amount of $3,500.00 to Plaintiff Jaciel Rocha and $1,500.00 to Early Opt-In Jay Schackle;

(5) approving attorneys' fees and costs to Class Counsel in the amount of $99,382.00; and,

(6) approving distribution of the remaining Net Settlement Fund to the 1,134 Class Members as set forth in the Agreement and as follows:

a. $44,850.40 of the FLSA Settlement Fund will be distributed to the 171 Authorized Claimants, or approximately 15% of Settlement Class Members, that affirmatively opt-in to the Settlement based on total delivery miles driven by each Authorized Claimant.

b. The $44,000.00 Rule 23 Class Settlement Fund will be distributed to the 963 Class Members that neither affirmatively chose to opt-in nor out of the Agreement. These individuals will retain all rights under federal law and pursuant to the FLSA's opt-in provisions.

c. The $68,523.20 remaining following the initial distribution of the Settlement Funds will be held in the Reserve Fund. Under the terms of the Settlement Agreement, all Settlement Class Members who have neither excluded themselves from the settlement nor Opted-In to the Settlement remain eligible to submit a claim for up to the full amount of their share of the FLSA Settlement Fund from this fund for an additional six months.

(7) Enjoining all Settlement Class Members from prosecuting any and all of the Settlement Class Members' Released Claims during the applicable Release Period against Defendants and the Released Parties;

(8) Enjoining the Class Representative from prosecuting any and all of the Class Representative's Released Claims during the applicable Release Period against Defendants and the Released Parties;

(9) entering a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

RESPECTFULLY SUBMITTED,
*/s/ Jay Forester*
**J. Forester***
Texas Bar No. 24087532
**Meredith Mathews***
Texas Bar No. 24055180
*Admitted Pro Hac Vice*
**FORESTER HAYNIE, PLLC**
400 N. St. Paul Street, Suite 700
Dallas, Texas 75201
(214) 210-2100 phone
jay@foresterhaynie.com

**Matthew D. Rose**
IARDC No. 6302878
9501 W. Devon Ave., Ste. 702
Rosemont, IL 60018
(312) 541-1078 phone
mrose@drlawpc.com

**Attorneys for Plaintiff and the Proposed Class**

## CERTIFICATE OF SERVICE

A copy of the foregoing document was electronically served on all counsel of record.

*/s/ Jay Forester*
J. Forester, Esq.

## CERTIFICATE OF CONFERENCE

Defendants, through counsel, have assisted in the preparation of this brief and consents to the relief requested herein.

*/s/ Jay Forester*
J. Forester, Esq.
